# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES STARRY, JR.,** | : | CIVIL ACTION NO. 1:16-CV-532 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **UNITED STATES OF AMERICA,** | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff James Starry, Jr. ("Starry") commenced this action against the United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671. Presently before the court for judgment is the complaint (Doc. 1) against defendant United States of America asserting one count of negligence. A non-jury trial was held on September 27, 2017. Pursuant to Federal Rule of Civil Procedure 52(a), the court's findings of fact and conclusions of law are set forth below.

## I. Findings of Fact

On June 4, 2015, Starry drove to the United States Post Office ("Post Office") in Lemoyne, Pennsylvania and parked his vehicle in the Post Office parking lot. (Doc. 38 at 34:16-36:25. The time was approximately 4:30 p.m. (Id. at 35:9-10). It was not raining when Starry exited his vehicle, but it had rained earlier that day and the roads and sidewalks were still wet. (Id. at 35:17-36:18, 48:9-22, 50:2-4; see also id. at 21:5-22:9). Christopher Hans ("Hans"), then-postmaster, opened the door to the Post Office for Starry. (Id. at 37:6-11, 50:16-21, 79:3-10). Starry slipped and fell on his left knee after taking one or two steps into the Post Office. (Id. at 37:9-

38:2, 50:22-51:7, 56:2-8). He attempted to break his fall with his right arm but landed flat on his stomach. (Id. at 37:9-23, 44:23-45:11, 51:1-14, 56:13-57:4). Starry thought that he slipped on water and told Hans this after he fell. (Id. at 38:23-24, 39:11-12). Hans examined where Starry had slipped and stated that he saw water. (Id. at 39:11-15, 58:17-21). Starry also saw water on the ground immediately after his fall. (Id. at 59:3-10). Starry then conducted his business at the Post Office, ran one additional errand, and returned home. (See id. at 39:22-40:1, 40:8-12, 57:18-58:10).[1] At the time of the incident, Starry was 63 years old. (Id. at 32:4-7).

As postmaster, Hans was generally responsible for maintenance at the Post Office. (Id. at 75:8-18). The entranceway where Starry slipped did not have a mat because Hans removed it shortly after he became postmaster in 2012. (Id. at 7:22-8:4, 10:16-11:3, 39:16-18, 75:16-21). The guidelines set forth in the Post Office's maintenance handbook expressly state that safety mats should be used near entranceways during rainy weather. (Id. at 12:12-14:19). Hans did not think the mat was necessary. (Id. at 13:1-8, 14:16-19, 75:22-76:10). On the day in question, there was no wet floor sign by the entranceway where Starry fell but there was a mat at another Post Office entranceway. (Id. at 77:15, 90:17-91:11). According to Hans, the normal course of business is to place signs and monitor the floor near the

---

[1] To the extent Starry's account of events conflicts with testimony given by Hans, the court credits Starry. A person injured in an accident may be more likely to remember details surrounding their injury than a third-party observer. The court found Starry to be credible and forthcoming, even where his testimony regarding his activity level prior to the fall may have undercut his damages award for pain and suffering.

entranceways when it rains. (See id. at 77:10-14, 89:14-17). Hans could not recall if it rained on the day Starry fell. (Id. at 78:3-6).

Starry had trouble maneuvering around his house shortly after the fall and called his family doctor. (Id. at 40:13-20, 59:11-15). He also started using a cane to walk. (Id. at 40:19-20, 59:14-15). Within one week of the fall, Starry saw his family doctor, who ordered several x-rays as well as an MRI of his left knee and referred him to orthopedic surgeon Matthew Espenshade ("Dr. Espenshade").[2] (Id. at 41:2-23, 60:6-9; see also Doc. 26-5 at 3:11-12, 14:18-20). Dr. Espenshade examined Starry's knee and reviewed the x-rays and the MRI. (Doc. 26-5 at 6:6-23; see also Doc. 38 at 60:10-12). He diagnosed Starry as having a torn meniscus in his left knee and some underlying degenerative arthritis and recommended surgery. (Doc. 26-5 at 6:24-9:7). Starry elected to have surgery because he continued to have trouble walking. (Doc. 38 at 42:3-7). After surgery, Starry went to physical therapy and received an injection in his left knee to prevent further progression of his arthritis. (Doc. 26-5 at 11:23-13:16; see also Doc. 38 at 42:15-43:18, 61:19-62:5). Dr. Espenshade testified that it is his opinion to a reasonable degree of medical certainty that Starry's fall at the Post Office caused him to tear the meniscus in his left knee. (Doc. 26-5 at 14:1-17).

Post-surgery, Starry's life continues to be negatively impacted by his left knee. (Doc. 38 at 46:8-23). Specifically, he experiences pain and cannot walk more than short distances without his cane. (Id. at 43:24-44:16, 63:7-16). He has difficulty

---

[2] Counsel for Starry played Dr. Espenshade's video deposition in its entirety at trial. (Doc. 38 at 31:9-10). A copy of the deposition transcript is available on the docket. (See Doc. 26-5).

3

using stairs, running basic errands such as going to the grocery store, and can no longer kneel. (Id. at 34:9-10, 46:10-23, 63:19-64:9). Starry did not previously have problems with his left knee. (Id. at 33:17-22, 42:11-14, 60:19-22). Prior to the fall, a typical day for Starry involved completing household chores, watching television, and running errands. (Id. at 66:8-19). He occasionally played tennis and volleyball, and at times swam. (Id. at 64:20-65:22). He also went fishing with his friend James Pace ("Pace") approximately one to two times each year. (Id. at 70:7-10). Pace testified that in the 35 years he had known Starry he had never seen him limp or use a cane. (Id. at 70:20-71:10, 72:20-73:6). The two men have not been fishing together since Starry's fall. (Id. at 71:18-72:16, 73:7-11). Starry continues to swim but no longer plays tennis or volleyball. (See id. at 65:16-22). He was not employed at the time of his fall and does not intend to work in the future. (See id. at 33:4-10, 64:10-17).

## II. Conclusions of Law

The court must apply the law of the place where a contested act or omission occurred when considering a cause of action, including negligence, under the Federal Tort Claims Act. See 28 U.S.C. § 1346(b); Santos *ex rel.* Beato v. United States, 559 F.3d 189, 193 (3d Cir. 2009). To establish negligence under Pennsylvania law, "a plaintiff must demonstrate: (1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting to the plaintiff." Farabaugh v. Pa. Tpk. Comm'n, 911 A.2d 1264, 1272-73 (Pa. 2006).

4

A possessor of land owes the highest duty of care to a business invitee. Estate of Swift v. Ne. Hosp. of Phila., 690 A.2d 719, 722 (Pa. Super. Ct. 1997). A business invitee is an individual who is on the land for a "purpose directly or indirectly connected with business deals with the possessor of the land." Id. A landowner has an "affirmative duty" to protect business invitees from known dangers as well as dangers that "might be discovered with reasonable care." Reinoso v. Heritage Warminster SPE LLC, 108 A.3d 80, 85 (Pa. Super. Ct. 2015) (internal quotation marks omitted); see also Farabaugh, 911 A.2d at 1272 n.10. To establish a breach of that duty, a business invitee must prove that the proprietor of the land had either "a hand in creating the harmful condition" or "had actual or constructive notice of such condition." Estate of Swift, 690 A.2d at 722.

Proximate cause may be established by evidence that the negligent act or omission was a "substantial factor in bringing the harm" suffered by the plaintiff. Jones v. Montefiore Hosp., 431 A.2d 920, 923 (Pa. 1981). But the plaintiff need not "exclude every possible explanation" for their injury. Id. Specifically, "the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." Id. (quoting Majors v. Brodhead Hotel, 205 A.2d 873, 878 (Pa. 1965)). To establish the damages requirement, the plaintiff must demonstrate that he suffered an actual injury. See Openbrier v. Gen. Mills, 16 A.2d 379, 380 (Pa. 1940); Sisk v. Duffy, 192 A.2d 251, 252-53 (Pa. Super. Ct. 1963).

Starry has proven by a preponderance of the evidence that the United States is liable for negligence. The Post Office had an affirmative duty to protect Starry, a business invitee, against known and reasonably discoverable dangers. Reinoso, 108 A.3d at 85; see also Farabaugh, 911 A.2d at 1272 n.10. The court finds that the Post Office, through Hans, breached its duty. Hans testified that it was his decision to remove the mat from the entranceway where Starry slipped. Hans further testified that it was standard practice to put warning signs out when it rained. The evidence presented at trial shows that it was raining on June 4, 2015, and that there was water by the entranceway where Starry walked in. Hans, as postmaster, failed to mitigate this danger by erecting warnings signs or laying down a mat. The court further finds that Starry suffered an actual injury, a torn meniscus, and that his fall at the Post Office was a significant factor in causing that injury.

Under Pennsylvania law, damages for pain and suffering may be awarded for, *inter alia*, "physical pain and suffering," "disfigurement," and "loss of enjoyment of life." McDonald v. United States, 555 F. Supp. 935, 971 (M.D. Pa. 1983). There is no precise formula for courts to use in calculating the amount of the award. Id.; Mack v. Johnson, 430 F. Supp. 1139, 1150 (E.D. Pa. 1977). Instead the court must determine an appropriate amount after a consideration of "equity, reason[,] and pragmatism." Mack, 430 F. Supp. at 1151. The court finds that Starry experienced pain and suffering as a result of his fall at the Post Office and that he continues to experience pain that impacts his activity level.

### III. **Conclusion**

For the aforementioned reasons, the court finds in favor of Starry, and will award damages for past medical expenses in the amount of $4,143.84[3] and damages for pain and suffering in the amount of $21,000.00. The total damages calculation is $25,143.84. An appropriate order shall issue.

      /S/ CHRISTOPHER C. CONNER
      Christopher C. Conner, Chief Judge
      United States District Court
      Middle District of Pennsylvania

Dated:    January 11, 2018

---

[3] The parties stipulated to a Medicare lien in the amount of $3,815.30 and a Medicaid lien in the amount of $328.54. (Doc. 38 at 98:7-99:5).